# Glass, Appellant, *v.* Morgan.

*Wills—Construction—Gift of "personal property."*

1. When a will is executed, the reasonable and natural presumption is that the testator intends to dispose of his entire estate. Where a testator declares in his will that he intends thereby to dispose of all his property, it will be held to be sufficient for this purpose, unless the language used in the dispositive clause is clearly insufficient to vest the property in the devisee.

2. Testatrix by will provided: "And as to my worldly estate and all the property, real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose of in manner following, to wit:" Then followed a devise to her husband of a certain house and lot, together with its contents, and also "my personal property; furniture and belongings; to have and to hold

as his own forever. My Will is that he be my only heir." At her death testatrix owned, besides the house and lot specifically devised to her husband, an undivided interest in two lots of ground, which had been devised to her as a contingent interest in remainder, and of which, at the time of her death, she had not possession. *Held,* the testatrix did not die intestate as to any part of her estate but gave all of her property to her husband. The opening clause of the will, coupled with the gift of all personal property to her husband, and the words, "my will is that he (her husband) be my only heir," make it clear that she intended to make her husband her residuary devisee.

Argued April 22, 1913. Appeal, No. 74, Jan. T., 1913, by plaintiff, from judgment of C. P. Blair Co., March T., 1909, No. 295, for defendant, in case of John J. Glass v. Minnie Morgan, in her own right, and as executrix of James Morgan, deceased; Louisa Foster or Louisa Forster, David Belford, Elizabeth Ekey, Jemima Scott, Agnes A. Wall and Milo Wall, her husband; John Howieson, Kate Howieson, William Howieson and Mary Howieson. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Ejectment to recover an undivided one-half interest in land. Before BALDRIDGE, P. J.

The case was tried without a jury under the Act of April 22, 1874, P. L. 109.

The opinion of the Supreme Court states the facts.

The Court entered judgment for defendants. Plaintiff appealed.

*Error assigned,* among others, was in entering judgment for defendants.

*J. Garfield Houston,* for appellant.

*William S. Hammond,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, May 22, 1913:
This is an action of ejectment and the plaintiff claims

title through his wife's will. The defendants are the collateral heirs of his wife. Annie Couch Glass died testate in Cleveland, Ohio, on May 6, 1899, leaving to survive her John J. Glass, her husband, but no issue. Immediately following the introductory part of her will in which Mrs. Glass declares that she is desirous of directing how her estate shall be disposed of after her decease, her will provides: "And as to my worldly estate and all the property, real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I Devise, Bequeath and Dispose of in manner following, to wit: First,— My Will is, that all my just debts and funeral expenses shall be paid out of my Estate, as soon after my decease as shall be found convenient. Second,—I give, Devise and Bequeath to John J. Glass, related to me as my husband, all my rights, powers & privileges in the House & Lot, known as No. 20 Ursula St., City of Cleveland, Ohio; together with its contents, my personal property; furniture and belongings; to have and to hold as his own forever. My Will is that he be my only heir. I do appoint my husband the said John J. Glass, my Executor, without Bond."

In addition to the property specifically devised and bequeathed to her husband by Mrs. Glass, she owned at the time of her death the undivided one-half of two lots of ground in the City of Altoona, in this State, which is the subject of this controversy. It was devised to her by her step-mother as a contingent undivided interest in remainder in the two lots, and at the time of Mrs. Glass's death she was not entitled to and did not have possession of the property. The single question for decision raised on this record is whether the words: "My Will is that he be my only heir," refer to the property specifically devised and bequeathed or to the testatrix's residuary estate, the real estate in controversy. If the former interpretation be correct the testatrix died intestate as to the residuary part of her estate; if the

latter construction prevails John J. Glass, her husband, takes not only the property specifically devised and bequeathed to him but also the testatrix's residuary estate, the real estate in dispute. The learned trial court before whom this case was tried under the Act of April 22, 1874, P. L. 109, held that Mrs. Glass died intestate as to the residuary part of her estate and entered judgment for the defendants. The plaintiff has taken this appeal.

We do not agree with the conclusion of the learned court. We think that the testatrix intended to and did dispose of her entire estate by her will and that, therefore, John J. Glass, her husband and the plaintiff in this action, is entitled to recover the real estate in controversy. When a will is executed the reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption of an intention to die intestate as to any part of his estate when the words used by the testator will clearly carry the whole. Hence, the rule which universally prevails that a will must be construed so as to avoid a partial intestacy unless the contrary be unavoidable. In the case in hand we have not only this canon of construction in aid of the contention that the testatrix disposed of her entire estate, but we have her own written declaration that she does dispose of the "estate and all the property, real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled to at the time of my decease." This language leaves no doubt of her intention to dispose of all her estate and is sufficient for the purpose, unless the language used in the dispositive clause is insufficient to vest the property in the devisee.

There is no question, of course, that the testatrix's husband takes the house and lot in Cleveland, Ohio, and the other property specifically devised and bequeathed. The contention of the appellees is that the words, "my will is that he be my only heir" refer to the property

specifically devised. This construction, however, is entirely too narrow, and ignores the introductory part of the will as well as the distinct and positive declaration by the testatrix of her intention to dispose of her entire estate. Keeping in view the legal presumption as well as the testatrix's declared intention to dispose of her whole estate, it is apparent, we think, that by the words quoted she intended to dispose of the residue of the estate. There is no other part of the dispositive clause of the will that will accomplish the purpose. The testatrix disposed of her residuary estate by that clause of her will or it was not disposed of at all, and an intestacy resulted. The disposing part of the will is contained in a single paragraph. She makes no attempt in any other part of the will to devise or bequeath any part of her estate. The paragraph follows her declared intention to dispose of all her property. If this paragraph were one of several paragraphs containing devises or bequests the appellees' contention as to the interpretation of the words might have some force. In that case they might possibly refer to the previous disposition of the Cleveland property in the same paragraph. There being, however, but one dispositive paragraph in the will and that immediately following the testatrix's declared intention to dispose of the whole estate the conclusion necessarily follows that she intended the language of that paragraph to carry out her purpose to dispose of the residue of her property. That she did not describe the property and refer to it specifically may be accounted for by the fact, found by the court below, that while, at the date of the will, she knew she had an interest she did not know the exact nature of the interest, nor did she know whether she would ever come into possession of the property, as it depended on whether the life tenant, then alive, married and had issue who, by the terms of the devise, would take the property in fee subject to the life estate. There were other provisions in the will making the quantity of in-

terest of Mrs. Glass in the property indefinite and uncertain. She manifestly thought the language used by her would carry such interest.

The learned court says that there is a complete lack of a subject for disposition in the words used by the testatrix. If the clause be read alone it might give some ground for the contention, but it must be read in connection with the other parts of the will, and when so read shows that the subject for disposition was all of the testatrix's estate except what was specifically disposed of. She disposes of "all the property, real, personal or mixed," and immediately following this language gives the Cleveland property to her husband and declares: "My will is that he be my only heir." This language read in connection with the context makes it clear that the subject of the clause is the residuary part of the estate. It is a maxim of legal construction that in the interpretation of a will every part thereof must be considered and if possible given effect, and that the intention of the testator must be ascertained from the whole instrument.

We think the words used are sufficient to vest title in the devisee. By the word "heir" the testatrix manifestly intended that her husband should succeed to or be the devisee of her property after her death. In other words, the testatrix intended that her husband should take the residue of her estate or property the same as an heir would take it after her death intestate, viz: in fee simple. Mr. Jarman (1 Jarman on Wills [6th Eng. Ed.] 82), in discussing the operative words of a testamentary disposition, says: "An appointment or acknowledgment of a person as the testator's heir may operate as a general devise of his real estate." In Tayler v. Web, 82 Eng. Rep. 728, 742 (Style 302), the words: "I do make my cousin Giles Bridges my sole heir and my executor," were held to constitute the cousin devisee in fee of the testator's lands. In Tilly v. Collyer, 84 Eng. Rep. 895 (3 Keble 589), HALE, C. J., said: "Therefore, albeit

there is no express devise to S., yet, she being named his heir, this is sufficient to exclude the rest, and to make her sole heir." Mr. Jarman (Vol. 1, 1015) further says: "There are several cases in which such words as 'I make A. B. my heir,' have been held to operate as a general devise of the testator's real estate." In Succession of G. Ehrenberg, 21 La. Ann. Rep. 280, the words of the will were: "Mrs. Sophie Loper is my heiress. G. Ehrenberg." Subsequently the testator added, "the legatee's name is correctly spelt Loeper. G. Ehrenberg." In reversing the lower court which held that there was no disposition of the property, Chief Justice LUDELING said: "It is certain that Ehrenberg intended to make a will, and that he intended that the act in question should be probated and executed as his testament. It seems to us equally certain that the desire, will, of Ehrenberg was, that Sophie Loeper should have his property after his death, inherit it, that she should be his heir or universal legatee. The testator's intention is the object to be ascertained, and when learned beyond a reasonable doubt, it is the duty of courts to enforce it, if the dispositions be not reprobated by law."

The judgment of the court below is reversed, and judgment is now entered in favor of the plaintiff and against the defendants for the undivided one-half of the land described in the writ, costs to be paid by the appellees.